and James M. Bowersock, we have for the appellant, Mark Petty, and for the appellee, Todd Reardon. Mr. Petty. Thank you, Your Honor. May I please report, Mr. Reardon? Your Honor, in this case, the appellant has sought to have the trial court's ruling overturned as finding of indirect civil contempt, modification of child support, the admission of exhibits, and limitation of visitation. With respect to the first issue, the finding of indirect civil contempt, our argument is two-pronged. Number one, whether there was a proper finding of indirect civil contempt, and whether the attorney's fees were appropriate. The appellant, in this case, Your Honor, has claimed that there are many problems with the court's finding. The first of all is the allegation of contempt wherein it was suggested that the appellant yelled at the appellee, which is not prohibited by the court's order. The order required that each parent should refrain from discussing the conduct of the other parent in the presence of the children, except in a laudatory or complimentary way. The appellant has argued in this case that there was, number one, there was no proof of the yelling in the presence of the children. Number two, that the yelling was not prohibited. Number three, that the proof of the discussion of the conduct of the appellee in front of the children was not there. And finally, that much of the evidence dealt with conduct that occurred after the filing of the petition. In addition, we have attacked in our issue number four, the admission of certain exhibits that we claim were inappropriate exhibits. Don't you have to object at trial? Yes. You didn't object, counsel. Oh, yes, I did, Your Honor. Not according to the record we have. There were vociferous objections to the admissions of these exhibits, Your Honor. At what point in time? Well, throughout the – I'm sorry I can't tell you exactly what point in time, but the objections were made at the time there was an attempt to read these exhibits from the stand by the witness. In this case, another contention that we make about the contempt, Your Honors, is that this was a civil contempt, but not – this was a criminal contempt, but instead it is not a civil contempt. The allegation there requires several other criteria. In a criminal contempt, there are issues of due process, standard approved, jury trial. Did you argue that, Judge Everhart? No, I didn't argue that. So everyone just thought that this was going to be an indirect – that indirect civil contempt could be retrospective? No, I don't think that, Judge. But I think that there is case law that says that if it's the characterization of the trial court, let alone the counsel, as a civil contempt is not binding on the court. And in this case, you can't have a criminal – or a prosecution for civil contempt when there is – it's essentially a criminal contempt. Suppose we agree with you. What relief can we give you? I mean, was it the penalty only that – don't want to let it happen again? Well, there is relief because attorney's fees were awarded by the court, and that was specifically on the reason that contempt was found. He didn't look at Section 508 to determine attorney's fees. So the attorney's fees awarded were based upon that finding? That finding, yes. Indirect civil contempt. That's right. Okay. I didn't realize that. So the relief we could give you would be precisely what, then? The relief would be to vacate the court's order on the civil contempt and to either remand for a determination of – Where in your brief have you raised the issue of attorney's fees? We raised the issue of attorney's fees in the very issue where we suggested to the court, count one, that the contempt was inappropriate. Okay. And if we agree with contempt is inappropriate, where do you raise the question of attorney's fees? In that argument there, Your Honor. Where do you do that? I'm sorry, I don't have the brief in front of me. And even so, counsel, why the court did find the violation of its orders, even though it found that it wasn't consummations. Isn't that right? By your client? I don't know what the court – I don't know that to be true, Judge. Well, didn't the court say that there was a violation of the court order with regard to your client, but then partly it wasn't going to hold him in contempt on some of the other matters? The court held that he was behind on the expenses and that he was behind on child support. I think there were six contentions of contempt by the petitioner in this case, but the award of attorney's fees under the statute is based upon a finding of contempt. Well, but the statute requires that if you find that the order's been violated, that attorney fees should be awarded. I don't read it that way, Your Honor. That section 508? Yes. Shall be awarded, it says, this violation? I think it requires a finding of contempt. No, it doesn't. Okay. Well, that would be my contention, Your Honor. Okay. Your Honor. Okay, now back to my question. Remand and instruct the trial court to do what? Well, I don't think there was any evidence – the trial court, if he's going to award attorney's fees, they have to be requested in the petition. I think they were requested in the petition under the contempt proceeding. They were not requested otherwise, but the provision for seeking attorney's fees, as I understand it, would be determined by the court by examining the criteria under Section 508 of the Act, namely looking at the relative spending powers of the parties. I think there are five or six criteria there. Okay, but remand to do what? To determine if attorney's fees should be awarded in this case. I don't think they requested attorney's fees. Generally, I think they requested attorney's fees only because there was contempt. In the count for contempt, there were two counts here, one for contempt and one to modify. I don't believe – this is based on my recollection – that there was any request for attorney's fees in the count seeking to modify. Okay, thank you, counsel. The key distinction between criminal and civil contempt in this case is that there has to be an opportunity to enter a purge order. Essentially, the appellant didn't fail to do what was ordered, but did something that was prohibited by the order. The court's purge order, in this case directing the appellant not to speak ill of the mother in front of the children until the end of the school year, was essentially an order for him to do what he was already required to do by the judgment and was not a purge at all because no purge order could be entered. Finally, the court's finding in this case had to be based upon something that occurred between March 23, 2007 and December 7, 2007, the dates between which the judgment was entered and the contempt petition was filed. We would suggest that there was no proof at all of any such conduct during this period of time or, for that matter, any other period of time that was... Let me ask you about this lawnmower, which I note Mr. Reardon is appealing. How did that come about? Isn't this personal property? Didn't the marital settlement agreement say that it all goes to her? Judge, I don't think it was personal property. You mean it's real property? No, the marital settlement agreement, Your Honor, dealt with household goods and dealt with motor vehicles and other things like that, hunting equipment, specific versions or categories of property. That's the first argument. The second argument is, Your Honor, that there was no disposition by the court of the marital debt that was acquired in the purchase of the property. My client had paid for it, and as far as the trial court's determination, he made a determination that if he assigned that debt to my client, that he would award the lawnmower to it. It was not specifically mentioned in the marital settlement agreement any place. Well, didn't the marital settlement agreement say she gets to keep all the property not mentioned here? Yes, it said that she would. No, it didn't say not mentioned here. It talked about possession of the property. Okay, she gets to keep all the property in her possession. Where was the lawnmower at the time? The lawnmower was in her possession. Then what's going on, counsel? How come this is relitigated? I believe because the trial court ordered my client to do something that he wasn't ordered to do with the original judgment, that is to pay the debt on the lawnmower. When did that happen? When did that, when did he? You're saying the court ordered him to do something that he was not originally ordered to do? That's correct. Okay, that must have been sometime after the marital settlement agreement was reached? It was in the judge's order on this whole matter. In his disposition, he granted my client the lawnmower, and at the same time he ordered him to pay the lawnmower debt, which he had been paying since the day of the judgment. But that was after the fact? That was after the marital settlement agreement, long after the marital settlement agreement. Well, why should the marital settlement agreement have been reopened? I used to do a lot of these things, counsel, and I remember back in the day that marital settlement agreements, good. I didn't have to then decide who gets until he's pickle fork. And I don't understand why the judge entertained your request that, gee, let's reopen this. I want that lawnmower back. It seems to me at best this was an oversight from that being mentioned in the marital settlement agreement. It was just in the general language left in her possession. That's where it should have belonged. What about that? Well, I don't know what was in the judge's mind, Your Honor, but I do know that he didn't have the power to modify the judgment because the marital settlement agreement said that he did have the power to do that. And I would just be speculating to say that he found that there was a debt that wasn't covered by the marital settlement agreement. He thought that that ought to be addressed. And likewise, he didn't think it was fair that my client pay the debt on the mower and not receive the mower. I mean, there was testimony. What kind of lawnmower is it? I think it's a Kubota. I think it's a mower that costs $6,000 to begin with, but that's outside the record. And the debt was about $4,000. It's a big riding mower. They had a place out in the country. So when she brings this case back to court for having nothing to do with the lawnmower, then you decide, well, by God, we're here. Let's go get the lawnmower. And you have a cross petition? That's right. And why exactly did the judge entertain the cross petition and bother to revisit this? Well, I'm suggesting that, and this is my guess, Your Honor, because he doesn't say anything about it in his letter of ruling. I'm suggesting that he heard that my client paid a debt that wasn't mentioned in the marital settlement agreement for the mower, and my client testified that that was something that he was entitled to receive, and the marital settlement agreement wasn't exactly clear about the mower. It didn't mention it. Actually, it was pretty clear. Well, the personal property in your position stays with her. Well, I would make the difference. I think the personal property was identified in categories, Your Honor, in the marital settlement agreement, and this mower is not one of those categories. But I would respectfully say that to the court. In the marital settlement agreement, was there any mention of this debt owed on the lawnmower? No, there wasn't. The only debts that were mentioned were the debts on the motor vehicle, and I think the debts on the house. Well, why was your client continuing to pay the debt on the lawnmower when he didn't have it? Well, his argument was that because that was his agreement that he would pay the debt and get the lawnmower, and I presume that it was to keep his credit rating up to snuff. So that was the agreement on that fairly expensive piece of property, and the marital settlement agreement makes no mention of either the debt, the payment, or the mower. That's correct. Did you write it? No, I didn't. In fact, my client, I think the evidence is that the parties had two different lawyers, and then at the end, one lawyer was brought in, but I didn't enter the case at the time of the execution of the agreement or the preparation, Your Honor. I've already discussed the issue of attorneys' fees in this case. The second issue deals with the trial court's modification of child support. The key fact of this modification is that the petition was filed on December 7th, less than nine months after the judgment was entered on March 27th. The appellant claimed that there were many problems in the trial court's finding, but the primary flaw in the court's reasoning is his finding of substantial change in the circumstances of the parties The only evidence of any change in circumstances was the appellant's income and the appellee's income. There was no evidence of the needs of the children either before or at the time of the petition or later. There was no evidence of costs, living expenses for the children or their support. The only evidence introduced was Mr. Broustock's net statutory income for 2007 and 2008. There was no evidence allowing the trial judge to decide what Mr. Broustock was making on the time of the divorce, which I think was in March of 2007, and the time that the petition was filed, which was in December of 2007, about nine months later. His income, I think, the only evidence was that his net statutory income went up about 5% from 2007 to 2008. Whereas there was evidence that the respondent's income or the appellee's income went up significantly more. Both the Hughes and the Harner cases cited by the appellant in this case stand for the proposition that the measure of substantial change goes back to the date of the original judgment and conditions that were existing at the time of the judgment must be substantially changed on the date of the modification. Accordingly, we would suggest that the court did not modify anything effective in December of 2007, which the court did. The court changed the support starting in December of 2007 to $405, and then as of the day of the rendition, he changed it again to $500 per pay period. With respect to, similarly, his only evidence of any change of the appellee's income was that the appellant's net statutory income had risen by about 5%. So we would suggest to the court that in this case there was evidence that the parties made an agreement in the first part of the year of 2007 that provided child support would be less than the statutory amount in consideration of payment of certain other expenses. And there was significant evidence to show that Mr. Barsach's obligation on those other expenses was a large obligation, the average of which brought it near to the statutory amount. Was he staying current on those other obligations? He was held to be behind by $400 and some odd dollars at the end of the case, but I want to point out to the court that a significant amount of the other obligations was $1,600 that the appellee incurred for braces that was available to pay in installments, but she decided to pay it all at one time, thereby putting my client $1,600 or half of that  But he did have rearages from time to time on those other obligations. Was that part of the court's consideration in establishing the new support level? I'm sorry, Your Honor, I can't say because the court did not comment in its letter ruling about the new support level, but what he did do was leave in force the additional obligations and then establish a support level at the statutory amount. So if these things continue on, Mr. Barsach's out-of-pocket is going to be somewhere in the neighborhood of 35% of his net rather than 28% of his net because of the other obligations. Counsel, before you finish, I wanted to call your attention to the trial court's order and get your comment on it. The last paragraph of the order says, Attorney fees shall be awarded to Mrs. Stevens' attorney based upon Mr. Barsach's noncompliance addressed herein and the court's finding of contempt. This is paragraph F of the Petition for Adjudication of Indirect Civil Contempt. On behalf of the Mr. Dunst's fees and expenses, that was her lawyer, associated with noncompliance and contempt issues shall be paid to Mr. Barsach. So, contrary to what you represented to us, the court twice referred to the basis of the order for attorney fees as being both contempt and noncompliance with the orders.  That's true, Your Honor. So, the finding of that the contempt was erroneous wouldn't necessarily change the attorney fee order, would it? I think it would, Judge. How can a trial judge award attorney fees when he doesn't jump through the hoops that are required by Section 508? What are those hoops? Those hoops are to consider the difference in economic circumstances of each of the parties, to look at the relative circumstances. There isn't any examination like that. So, we have the court's specific findings, however, that your client had violated conditions of these orders, although he decided that there was not willful confirmations. That's true. So, that's not enough for the order that attorney fees be paid? Just that by itself? I don't believe so. And indeed, not enough, but a requirement that attorney fees be paid. You're not familiar with that statute? I am familiar with the statute, but apparently I read it differently, Your Honor. I thought that there had to be, and the practice has been, there has to be a holding of contempt before the mandatory. Thank you. Thank you. Thank you, Counsel. Mr. Reardon? Thank you, Your Honor. I'll try to be brief, Your Honor. And I'm somewhat at a disadvantage as I was not trial counsel, but the first thing I noticed as the court drew upon it was this lawnmower issue. How many times are we going to be able to reopen a marital settlement agreement? Now, if Mr. Bowers doesn't like the ruling here today, is he going to come in and say, I want the house? And in the language of the marital settlement agreement, it does nothing more than re-cite the statute. They are modifiable when you go to court with a petition. There was no petition even filed here. It was a motion for a terminal court without verification. And for that reason, we think that that part of it. Well, the trial court apparently thought this was a matter of property before it and went ahead and addressed it. I agree, Your Honor. Was it objected to? It doesn't appear to be on the record. But I think judgments are meant to be final. And there was no relief sought within 30 days. And I think the original argument was – I think the original affidavit put forward the argument that I was part of surprise. They entered this judgment in the cloak of darkness. He signed an entry waiver and consent. Signing the marital settlement agreement put forward his obligations and somehow knew what he wanted because he excluded the hunting gear and his camping gear. But didn't that agreement actually allow for future modification by the court? Upon written modification, if I can have a moment. And I think it does. But I think the court has to also look at considering that this was – within the marital settlement agreement, also a joint parenting agreement, all child support and visitation were all within the same settlement agreement. Which those two items, by their very nature, are always modifiable. And I would argue, I think, if the court were to – if it is modifiable, if it's read to the degree that the counsel has put forward, that we might as well write the settlement agreement up because it has no bearing at all. So your first argument is that the trial court didn't have subject matter jurisdiction over the lawnmower? Correct. Wasn't there a motion submitted to the court asking to get the lawnmower? A motion to turn over the order. But it wasn't – it was after 30 days. Therefore what? I would argue the marital settlement agreement was a final, appealable order. 30 days. This isn't still before the court? It is. But I think inappropriate. Were you the one who argued the civil contempt? You weren't trial counsel? I was not, Judge, so I cannot argue what transpired. Doesn't civil contempt, indirect civil contempt, doesn't seem to work here, does it, Counsel? I agree with you, Your Honor. I'm the one that cited your ruling on debts and cited it in my brief. Counsel actually has done it. But I do think there were contempt issues that were civil. I would agree with it. Quit calling your mother bleep this and bleep that. It should be criminal contempt. I concede that. But I think there was grounds for indirect civil contempt. The failure to pay his costs until compelled. Well, but the trial judges I just read pointed out to Mr. Petty made the finding that he was in violation of the order but found for whatever reason it wasn't contumacious. Now, we're just looking at a cold record here, Counsel. I understand. How in the world are we supposed to say, no, Judge, you made a mistake. This was contemptuous conduct. It was contumacious behavior. And you misconstrued the moment in your own courtroom? I understand. We've got to give great deference to his determination. We're going to have to turn a blind eye to noncompliance as well. And that's what we have to do here. It was not just once. It was everything. He disputed the orthodontist bill. It was a sports bill. Everything that he owed money on, he disputed. And he didn't file a complaint. Are you familiar with the statute, by the way, that says you've got to pay attorney fees if you're in violation of the order? Yes, and noncompliance. Noncompliance. 508B. Okay. So we don't need a contempt finding for that? Not necessarily, no, Judge. I think noncompliance. I was just wondering if that was the Cumberland County common law that maybe you were thinking about as well that affects this and trumps the statute. No, I would not say that. And I practice in Cumberland, but not every day. But I think there were grounds for contempt. And I concede that I think the ground chosen by the court, I think the court got so frustrated, I'm going to choose this one, and I think it was wrong to choose that one. I think it was easier to choose the nonpayment. I didn't want to pay. I didn't feel that the braces were necessary. Mr. Bowersalk just wanted to sit in the shoes of doctors. I don't think sports activities come inclusive of sports fees. And the thing is, I think Mr. Bowersalk, if that was his petition, should have filed a petition of himself that he's saying the court has jurisdiction to modify. I want to exclude activities. I want to exclude medical bills. And I think he has to do that in regards to his child support, too. I think he could have filed a petition to lower his child support. We should deviate, Judge, because I'm paying half the school fees. But he didn't. He chose not to file a petition to lower it. So I think the court can conclude that the child support setting was appropriate. As the child support judge, I think there was substantial evidence that a 5% pay increase occurred. I consider that substantial. If you extrapolate that 5% every year, at what year is Ms. Stevens now, Ms. Bowersalk, going to come back and say, okay, now he's got it. Four years later, it's 20% more than what he was making. And the record is clear, and I cite to it. Before the litigation starts, he talks about how much overtime he's getting. How much overtime he's getting. Then when we get to court, well, I'm going to resign from the SWAT team to skew his income back down. When it was advantageous to him, and use it as a tool that he was working all this overtime, that's why he couldn't exercise his visitation, but then he's going to resign. Well, if you work all this overtime for visitation purposes, you also have to do it for child support purposes. Is Counselor right when he says that with the other obligations assigned by the court, the new support would constitute about 35% of his client's net? I would disagree because you can't determine futuristic what he's wanting us to say. Well, his basketball fees or his medical bills this year are going to be this. I think medical bills are ever-evolving, right? Your child may have no broken bones in year one, five broken bones in years two. But that wasn't pled by him. You know, my child support is too high because I got all these additional expenses. Well, if the support is set at 28% of net, and there are indeed additional obligations, it will be in excess of 28%. No question about that. I would concur, Your Honor. But we just don't know how high or how much over 28% it's going to be? In the court's question, is that support obligations inclusive of medical, school fees? Yes, I think it would be a matter of how much overpaying on the year. Like I said, I'm sure there are some years that it might reach 35%. I'm not doubting that. If you have a medical procedure like braces, which it did occur in this case, yes, it's possible. But you can't say, well, every year then I'm going to be paying 35% because these braces were put on this year. I'm assuming next year my other child's going to have braces. They're asking the court to look retrospectively every year in the future and assume some medical bills, and that isn't fair. And if those situations arise because child support is always modifiable, he should petition the court, let me out of this 28% because I am paying the orthodontic bills this year. They chose not to. Instead, if you read the record, Mr. Bowersalk was a, you know, I don't want to pick him. I don't think, you know, they could have went somewhere else for the braces. I didn't like this. I don't like that. And that's not the attitude I think we want in child support and medical enforcement cases. And I'll be brief. The last issue is visitation, and I know it wasn't this appellate court or the appellate court that said that modifying the schedule was not a restriction. And in this case, Mr. Bowersalk wasn't exercising some visits. Some were an hour and 15 minutes on a Tuesday, Thursday after school to Friday until he goes to work. Broken up to where now he gets, and his work schedule changed three times in one year. Yeah, that's what the record is. Three times in one year his work schedule changed. Now he gets every other week, Wednesday, all the way through Saturday when he goes back to work. And I think, if anything, Judge Everhart gave him more visitation, actual time, than what he was taking under the old one. And now they're trying to say, well, this is a restriction on visitation, such as supervises us. No, in fact, it's more liberal. He gave him a broader, liberal holiday visit than was originally contemplated. Which of the parties is most in need of the lawnmower? Meaning, how much do they have to mow? I don't know. I know the former owner has a rural address in the city that Mr. Bowersalk now lives in the city. But I think it was just, I think it was a slapback suit, as we used to say. A what? A slapback suit. You want child support? Okay, good. I want them all. I like that. Slap, slap, slap. Thank you, Your Honor. Thank you, Counsel. Rebuttal? Jeff, the lawnmower wasn't a slapback suit. The lawnmower was something that was agreed upon by the parties, and it was a slapback suit. My client wouldn't have been paying a $4,000 debt all the time during the period of this proceeding. Okay, let me just stop. It was agreed upon by the parties, but they failed to incorporate it into the written agreement? Is that your argument? That was Mr. Bowersalk's testimony. Okay. So there is evidence in the record in the form of your client's testimony? Yes, it was disputed by Mrs. Bowersalk. So she disputes that there was ever an agreement reached as to the lawnmower either oral or in writing? Well, I don't think she disputed that he would pay the debt, but she disputed that he was entitled to the lawnmower. So you know what a slapback is, but you know this is not it? Well, it was the first time I heard that, but after Mr. Reardon described it, then I'm saying it wasn't a slapback. Okay. With respect to the suggestion that Mr. Reardon makes about the extra, it's ironic to me that he mentions the braces, because here is the fact that braces are in the record. Mr. and Mrs. Bowersalk had a conversation about getting braces for their child in the fall. Mr. Bowersalk said, could you wait and get them put on when I get my income tax refund next spring? In spite of that, she sent the child to get the braces put on. The braces could have been paid at $100 a month over a period of 18 months. Instead, she paid for the whole thing and then came into court and claimed that he was $1,800 behind on these additional things that he had to pay. That's the issue with the braces. Mr. Bowersalk wasn't resisting that he pay the braces. What did the trial judge say about all this? The trial judge didn't say anything in his order. I'm not sure it's always true, but certainly I couldn't have waited 18 months for my children's braces. No, no. You sign a contract. The evidence was you sign a contract and then you pay a down payment and then you pay installments for each party. I'm familiar. Unfortunate. Do the installments include interest? I'm sorry. I don't remember whether they did or not. I think the evidence was that she paid interest because she put it on a credit card or something and they charged her interest for it. But the point was I don't know whether the original contract required it or not. With respect to this issue of the child support, Mr. Bowersalk didn't have to file a petition to modify his child support. It was already where he agreed that it would be when the parties made their marital settlement agreement when they got divorced less than nine months before she filed the petition in this case. And as far as the visitation, the evidence was that Mr. Bowersalk was getting any visitation that he requested up until the time that Mrs. Bowersalk, in addition to what the judgment was, up until the time that Mrs. Bowersalk filed this petition. And then it went right back to following the order in this case. Thank you very much. Thank you, counsel. We'll take this matter under review.